1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SARAH ISBELL,

        Plaintiff,

  v.

STATE OF OKLAHOMA, OKLAHOMA
DEPARTMENT OF HUMAN SERVICES,
OKLAHOMA DEPARTMENT OF CHILD SUPPORT
SERVICES, ED LAKE, officially and individually,
DAVID HAMMONS, officially and individually, JIM
HUTCHINSON, officially and individually, STATE
OF CALIFORNIA, CALIFORNIA DEPARTMENT
OF CHILD SUPPORT SERVICES, ALISHA
GRIFFIN, officially and individually, MICHAEL
WILKENING, officially and individually, and LISA
DUGAN, officially and individually,

        Defendants.

_____/

No. C 18-00269 WHA


**ORDER GRANTING
DEFENDANTS'
MOTIONS TO
DISMISS**

**INTRODUCTION**

      In this civil rights action, a previous order dismissed plaintiff's complaint *sua sponte*

with leave to amend. For the reasons below, plaintiff's amended complaint is **DISMISSED**

without leave to amend, with the exception of plaintiff's claim of a Fair Credit Reporting Act

violation, which is **DISMISSED** with leave to amend.

**STATEMENT**

      *Pro se* plaintiff Sarah Isbell, a transgender woman, lives out of her car in Northern

California. Her former partner sued her in Oklahoma state court for child support in both

ongoing payments and arrears. Plaintiff claims she could not personally appear in state court due to her alleged disability, poverty, and fears of gender-based violence. Nonetheless, the state court did not allow plaintiff to participate in the trial by telephone. In January 2016, the state court found that plaintiff owed both future payments and arrears for the support of her two children. Agencies of both Oklahoma and California have attempted to enforce the state court's judgment against plaintiff. In so doing, the agencies, here defendants, have suspended plaintiff's driver's license and allegedly reported inaccurate information to credit agencies regarding plaintiff's credit worthiness. Defendants' actions have allegedly contributed to plaintiff's continued indigence and inability to consistently pay child support. Plaintiff participates in ongoing judicial proceedings concerning her child support payments in California state court (Amd. Compl. ¶¶ 41–44, 46, 85, 96).

In January 2018, plaintiff brought this action against (1) the State of Oklahoma and its Department of Human Services, (2) Jim Huchinson, the Director of the Oklahoma Department of Health and Human Services, in his official and individual capacities, (3) the State of California and its Department of Human Services, and (4) Alisha Griffin, the Director of the California Department of Child Support Services, in her official and individual capacities. Plaintiff later amended her complaint to include as defendants (5) Michael Wilkening and (6) Lisa Dugan in their official and individual capacities. Plaintiff seeks relief under Title II of the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the Fair Credit Reporting Act (FCRA), and 42 U.S.C. § 1983. Plaintiff alleges that defendants discriminated against her on the basis of her handicap in that defendants allegedly refused to mitigate or negotiate mitigation of the enforcement of her child support order. She also alleges that defendants violated the FCRA through misrepresenting her financial status to credit agencies. Furthermore, she alleges defendants violated her constitutional rights by failing to accommodate her requests to participate via telephone and failing to provide her with proper notice of the child support-related proceedings, and that all of the above-alleged behavior violates public policy.

In March 2018, Magistrate Judge Robert Illman filed a Report and Recommendation after reviewing plaintiff's original complaint. As found by Judge Illman, the complaint challenged an Oklahoma state court judgment ordering plaintiff to pay monthly child support and also challenged subsequent actions taken by defendants to enforce that judgment. Judge Illman could not determine whether plaintiff sought to pursue claims against defendants apart from her de facto appeal from the state court judgment and accordingly recommended dismissing the action for lack of subject matter jurisdiction with leave to amend. Plaintiff then filed her objections to the Report and Recommendation. An order dated April 12 overruled plaintiff's objections and adopted Judge Illman's recommendations. Plaintiff timely filed an amended complaint. Defendants Jim Hutchinson and the State of Oklahoma, Department of Health and Human Services now move to dismiss plaintiff's amended complaint in its entirety (Dkt. Nos. 17, 27, 34, 41, 45, 46).[1]

## **ANALYSIS**

### **1.    THE *ROOKER-FELDMAN* DOCTRINE.**

Because district courts cannot hear direct appeals from state court decisions, "they must decline jurisdiction whenever they are 'in essence called upon to review a state court decision.'" *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *D.C. Ct. Of App. V. Feldman,* 460 U.S. 462, 482 n.16 (1983)). "A federal action constitutes such a de facto appeal where 'claims raised in the federal court are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state court or require the district court to interpret the application of state laws or procedural rules.'" *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008). This *Rooker-Feldman* doctrine applies to final state court orders and judgments as well as interlocutory orders and non-final judgments issued by a state court. *Napolitano*, 252 F.3d at 1030. To address plaintiff's constitutional claims would be to review the Oklahoma state court's judgment and

---

[1] This order notes that plaintiff has renewed her request for appointment of counsel in her federal case. A previous order had denied this request, and plaintiff's request is again **DENIED** for the same reasons. Plaintiff has also renewed her motion to show cause and brought a motion for a preliminary injunction to protect parent-child rights. The latter motions are **DENIED AS MOOT**.

1   procedures, which is proscribed by *Rooker-Feldman*. Defendants' alleged violations of

2   Section 1983 and of plaintiff's First, Ninth, Thirteenth, and Fourteenth Amendment rights are

3   inextricably intertwined with the Oklahoma court's decision, specifically the state court's

4   alleged failure to properly consider plaintiff's defenses and alleged refusal to accommodate

5   plaintiff's appearance in court through telephone. A district court cannot review these state

6   court decisions. Similarly, plaintiff's public policy tort claim cannot be reviewed by district

7   courts, as it is tied at least in part to plaintiff's constitutional claims regarding the Oklahoma

8   state proceedings.[2]

9        Plaintiff's remaining statutory claims are not barred by *Rooker-Feldman* as they do not

10  "seek relief from the state court judgment" but rather assert "legal wrong[s] . . . by an adverse

11  party." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). Indeed, plaintiff argues that the

12  claims this order finds are barred by *Rooker-Feldman* implicate the enforcement of the state

13  court judgment rather than its substance, but a fair reading of her complaint indicates otherwise.

14        **2**.    ***TWOMBLY-IQBAL* PLEADING STANDARD.**

15        In order to survive a motion to dismiss, a complaint must allege facts sufficient to "state

16  a claim to relief that is plausible on its face," and allegations that are merely conclusory need

17  not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.*

18  *Twombly*, 550 U.S. 544, 555 (2007)). When the plaintiff proceeds *pro se*, courts should

19  "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v.*

20  *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Though the following FCRA, ADA, and

21  Rehabilitation Act claims bear upon defendants' enforcement of the Oklahoma state court

22  judgment rather than the state court decision or procedure, the claims still fail to pass muster

23  under the *Twombly-Iqbal* pleading standard.

24

25

26        [2]  The two parties disagree regarding whether plaintiff is able to bring her constitutional claims in state
     court. Defendants argue that because plaintiff can bring these claims in state court, the *Younger* abstention
27  doctrine precludes adjudication of plaintiff's constitutional claims. Because this order finds the *Rooker-*
     *Feldman* doctrine insulates plaintiff's constitutional claims from review, this order will not reach the question of
28  whether *Younger* abstention applies.

Plaintiff fails to allege adequate facts to substantiate her FCRA claim against defendants in their individual capacities. To plead a prima facie violation of the FCRA, plaintiff must contend that (1) an agency had notified the furnisher of a credit report about disputed information; (2) the furnisher failed to perform its statutory duties; and (3) plaintiff was injured as a result of that failure. *Reagan v. American Home Mortg. Servicing Inc*, No. C 11-00704 WHA, 2011 WL 2149100, at *2 (N.D. Cal. May 31, 2011) (citing 15 U.S.C. 1681 § 2(b), 1681(n), 1681(o)). A furnisher's statutory duties under the FCRA, which include modifying or deleting inaccurate information, are triggered only when the furnisher receives notice from the agency that the consumer disputes information provided by the furnisher. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Plaintiff provides no record that *credit reporting agencies* notified the defendant furnishers of the allegedly false information furnished by defendants. She instead repeats that she *directly* contacted the defendant furnishers and later adds that she "and/or" the credit reporting agencies notified defendant furnishers of inaccurate information concerning plaintiff that defendants had furnished the reporting agencies. Without more, plaintiff's allegations of FCRA violation are not enough to "nudge the complaint across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Because, however, plaintiff has ambiguously asserted that the credit reporting agencies notified defendants of the inaccurate information, plaintiff is granted leave to amend this claim if she can in good faith state a claim of FCRA violation.[3]

Plaintiff asserts that the ADA and the Rehabilitation Act are to be read interchangeably in her complaint. To plead a claim under Title II of the ADA or Section 504 of the Rehabilitation Act, the plaintiff must allege that (1) she is disabled; (2) she would have otherwise qualified to receive benefits from the public entity here implicated; (3) she was

---

[3] Defendants argue that plaintiff's FCRA claim is barred by the Eleventh Amendment. While this is true for her claims against state defendants and state officials sued in their official capacities, *Banks v. ACS Educ.*, 638 Fed.Appx. 587, 589 (9th Cir. 2016), the law is less clear regarding whether the Eleventh Amendment bars plaintiff's claims against defendants sued in their individual capacities. This order need not resolve the latter issue as plaintiff fails to state a claim of FCRA violation under FRCP 12(b)(6). Plaintiff's ADA claims, however, are not barred by the Eleventh Amendment, as Congress has abrogated Eleventh Amendment immunity from Title II ADA and Rehabilitation Act claims. *See Clark v. State of Cal.*, 123 F.3d 1267, 1269–70 (9th Cir. 1997).

denied access to the public entity's services or programs; and (4) this denial, exclusion, or discrimination was by reason of her disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Even when reviewing plaintiff's claims under the liberal *pro se* standard, her complaint fails to plausibly assert that the revocation of her driver's license was caused by discriminatory reasoning that violated the ADA or the Rehabilitation Act — plaintiff has not adequately substantiated a claim that she was discriminated against *because of* her disability. Plaintiff alleges that defendants penalized her for overdue payments by revoking her driver's license expressly because they knew her disabilities, a back injury and a circulatory disorder, made her dependent on her car. Statutes in both Oklahoma and California, however, provide that any parent who owes child support can be subject to driver's license revocation. 47 Okla. Stat. Ann. § 6-201(c) (West 2018); CAL. FAM. CODE § 17520 (West 2018). As currently pleaded, it is implausible that defendants revoked plaintiff's license because of her disability rather than her outstanding child support payments.

Plaintiff also alleges that defendants failed to accommodate her under the Rehabilitation Act. Plaintiff points to no authority that would permit defendants to grant her requested relief of mitigated support payments. Instead, plaintiff asserts that in response to her requests for accommodation, a representative of the Oklahoma defendants told her that the "State's attorney" could not "take any action" until the Oklahoma defendants received a Social Security award letter. If defendants are only able to mitigate the support obligations of those receiving Social Security Disability Insurance (SSDI), no law indicates that requiring an individual receive SSDI before accommodating that individual's disability is a failure to reasonably accommodate under the ADA. Plaintiff's claim that defendants failed to accommodate her disability is not facially plausible. Furthermore, wage garnishment, an avenue through which defendants have collected the child support plaintiff seeks to reduce, is a legitimate and regulated means of enforcing child support orders. 15 U.S.C.A. § 1673 (West 2018).

A plaintiff pleads a prima facie case of retaliation under the ADA when she shows that (1) she has engaged in a protected activity; (2) she was subjected to an adverse action; and (3) there was a causal link between the protected activity and the adverse action. *Brown v. City*

6

1    *of Tuscon,* 336 F.3d 1181, 1186 (9th Cir. 2003); 42 U.S.C.A. § 12203 (West 2018).

2    A "protected activity" is any activity through which a plaintiff pursues her rights under the

3    ADA. *Pardi v. Kaiser Found. Hosps.,* 389 F.3d 840, 850 (9th Cir. 2004). Any action that is

4    reasonably likely to deter a person from engaging in the protected activity at issue constitutes an

5    "adverse action," and such an action can include failing to timely update plaintiff's public

6    records. *See ibid.* In alleging that defendants retaliated against her under the ADA, plaintiff

7    specifically asserts that defendants knew of both her requests for ADA accommodation,

8    specifically the mitigation of enforcement of the support order, and the instant lawsuit alleging

9    an ADA violation. She further contends that due to their awareness of her assertion of her

10   rights under the ADA, defendants chose not to update plaintiff's DMV file in order to prolong

11   the suspension of her license. However, plaintiff again provides no factual basis for the causal

12   connection between her disability and defendants' actions beyond that defendants'

13   representatives appeared displeased with her. Her allegations are not plausible given the facts

14   she alleges.

**CONCLUSION**

16          For the reasons above, plaintiff's complaint is **DISMISSED** in its entirety without leave to

17   amend, with the exception of plaintiff's FCRA claim, which is **DISMISSED** with leave to amend.

18   Any amended pleading must be filed and served by **JULY 20, 2018**. If no amended pleading is

19   served by this date, judgment will be entered.

21          **IT IS SO ORDERED.**

23   Dated: July 6, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE